UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-10025-KING
MAGISTRATE JUDGE REID

PIERSON VILLALOBOS,

      Petitioner,

v.

MARK S. INCH,[1]

      Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

### I. Introduction

The Petitioner, **Pierson Villalobos**, has filed this *pro se* petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions for DUI manslaughter, entered following a jury verdict in Monroe County Circuit Court, Case No. 2009-CF-00176AM. For the reasons detailed below, the Petitioner is not entitled to habeas corpus relief.

This cause has been referred to the undersigned for consideration and report, pursuant to 28 U.S.C. § 636(b)(1)(B), (C); S.D. Fla. Admin. Order 2019-02; and the Rules Governing Habeas Corpus Petitions in the United States District Courts.

---

[1]Pursuant to Fed. R. Civ. P. 25(d), since Mark S. Inch has replaced Julie Jones as the Secretary of the Florida Department of Corrections, he is substituted as the proper respondent in this case.

For its consideration of the petition [ECF No. 1], the court has the Respondent's response to this court's order to show cause [ECF No. 13], along with its supporting appendix [ECF Nos. 14; 15], containing copies of relevant state court pleadings, including hearing and trial transcripts.

## II. Claims

Construing the arguments liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner*, 404 U.S. 519, 520 (1972), Petitioner raises the following grounds for relief:

1. The trial court violated his right to a fair trial when it:

   a. upheld the admission of detailed testimony regarding the victims' injuries, and

   b. allowed the admission of inflammatory autopsy photographs. [ECF No. 1, p. 4].

2. His constitutional rights were violated when:

   a. the State allowed exculpatory evidence to be destroyed;

   b. counsel was ineffective for failing to properly investigate and the preserve the potentially exculpatory evidence. [ECF No. 1, p. 6].

## III. Procedural History[2]

---

[2] For purposes of this Report, the Court has significantly abbreviated the procedural history in this case, limiting it only to the history relevant to the resolution of the claims raised in the petition.

In case number 2009-CF-00176AM, Petitioner was charged by information with two counts of DUI manslaughter, two counts of vehicular homicide, DUI with property damage and/or personal injury, and two counts of DUI with personal injury. [ECF No. 14-1, App. B].  Petitioner was convicted [ECF No. 14-1, App. C], but the appellate court reversed and remanded his case for a new trial based on trial court error. [*Id.*, App. D]. On retrial, Petitioner was convicted of the two counts of DUI manslaughter, and sentenced to two fifteen-year terms of imprisonment, to be served consecutively. [*Id.*, Apps. E, F].

On appeal, Petitioner raised one argument: the trial court's cumulative error of admitting inflammatory autopsy photographs and the improper bolstering of a key expert witness deprived him of a fair trial. [ECF No. 14-1, App. G]. On June 7, 2017, the Third District Court of Appeal *per curiam* affirmed Petitioner's judgment of conviction without written opinion. [*Id.*, App. I]; *see also Villalobos v. State*, 227 So.3d 588 (Fla. 3rd DCA 2017) (table).

On June 5, 2018, Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850, where he raised various grounds of ineffective assistance of counsel, including a claim that his lawyer was ineffective for failing to have the driver's side airbags tested for DNA. [ECF No. 14-1, App. K].  The trial court denied the motion for the reasons set forth in the State's response. [*Id.*, Apps. M, N]. On appeal, the Third DCA *per curiam* affirmed the trial court's denial of the Rule 3.850

Motion without written opinion. [*Id.*, App. P]; *see also Villalobos v. State*, 255 So.3d 839 (Fla. 3rd DCA 2018) (table). The proceedings concluded with the issuance of the mandate on November 2, 2018. [ECF No. 14-1, App. Q].

Petitioner then came to the Court filing his federal habeas corpus petition on **January 29, 2019**.[3] [ECF No. 1, p. 1].

### IV. Threshold Issues

A. Timeliness

Careful review of the procedural history of this case confirms that less than one year of un-tolled time expired after the Petitioner's judgment became final and the filing of this federal habeas petition. Therefore, as the Respondent correctly concedes [ECF 13, p. 7], the petition is timely filed under 28 U.S.C. § 2244(d).

B. Exhaustion

Next, the Respondent argues that all but one of Petitioner's sub-claims are unexhausted and procedurally defaulted from federal habeas review. **[**ECF No. 13, pp. 7-9]. In addressing the issue of exhaustion and procedural default, the Court must determine whether the claims raised here were raised in the state court proceedings, and whether the state courts were alerted to the federal nature of the claims.

---

[3]Absent evidence to the contrary, in accordance with the prison mailbox rule, a *pro se* prisoner's filing is deemed filed on the date it is delivered to prison authorities for mailing. *Washington v. United States,* 243 F.3d 1299, 1301 (11th Cir. 2001); Fed. R. App. 4(c)(1).

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies. See 28 U.S.C. §§ 2254(b), (c). To properly exhaust state remedies, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples,* 489 U.S. 346, 351 (1989); *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 456–59 (11th Cir. 2015).

Exhaustion is not satisfied "merely" if the petitioner presents the state court with "all the facts necessary to support the claim" or even if a "somewhat similar state-law claim was made." *Kelley v. Sec'y for Dept. of Corr.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004) (citation omitted). A petitioner must instead "present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Id.* For example, "[A] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin,* 541 U.S. at 32; *McNair v. Campbell,* 416 F.3d 1291, 1302-1303 (11th Cir. 2005).

To circumvent the exhaustion requirement, Petitioner must establish that there is an "absence of available state corrective process" or that "circumstances exist that

render such process ineffective to protect [his] rights." 28 U.S.C. § 2254(b)(1)(B); *see Duckworth v. Serrano,* 454 U.S. 1, 3 (1981).

Here, the Respondent asserts that **claims 1a, 1b, and 2a** of Petitioner's petition are unexhausted because he failed to raise them in state court. [ECF No. 13, pp. 8-9]. The Respondent, however, concedes that **claim 2b** is properly exhausted and ripe for habeas review. [*Id.* p. 9]. Petitioner has not filed a reply.

Regarding **claim 1a**, Petitioner's claim that the state court's admission of the medical examiners' testimonies detailing the victims' injuries violated his right to a fair trial, review of the record reveals that Petitioner never raised this claim on direct appeal. The record also shows that Petitioner failed to raise **claim 2a**, where he argues that the State unconstitutionally failed to preserve potentially exculpatory evidence, on direct appeal or in his Rule 3.850 motion. As such, neither issue was properly presented to the state court, and is therefore unexhausted.

Regarding **claim 1b**, review of the record reveals that on direct appeal, Petitioner raised claim 1b only as an issue of state law, supported only by citation to Florida cases and rules. [ECF No. 14-1, pp. 47-49]. His brief reference that the trial court deprived him of a "fair trial" [*Id.* p. 47] is simply not sufficient for purposes of exhaustion. *See Hartge v. McDonough*, 210 F. App'x 940, 943 (11th Cir. 2006) (finding that a single reference to a fair trial and no citation to any cases relying on federal constitutional law was insufficient to satisfy the exhaustion requirement).

Accordingly, claim 1b is unexhausted. *See Duncan v. Henry,* 513 U.S. 364, 366 (1995) (claim of evidentiary error not exhausted for purposes of federal review where presented to the state courts only as a violation of state law, and not expressly as a violation of due process guaranteed by the Fourteenth Amendment).

C. Procedural Default

It must next be determined whether Petitioner's failure to exhaust **claim 1a, 1b, and 2a** results in a procedural default in federal court. Here, Petitioner's unexhausted claims would now be procedurally barred if raised in the state forum because he has already completed a direct appeal and his Rule 3.850 motion. *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). In this case, a future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Id.* at 1303.

However, a procedurally defaulted claim may still be considered if the federal petitioner can demonstrate: (1) objective cause for the failure to properly present the claim and actual prejudice from the alleged constitutional violation; or, (2) a fundamental miscarriage of justice. *See Wainwright v. Sykes,* 433 U.S. 72, 87 (1977); *Tharpe v. Warden,* 898 F.3d 1342, 1344-47 (11th Cir. 2018). The Petitioner can show cause by alleging that some objective factor, external to the defense, impeded his effort to raise the claim properly in the state court. *See Murray v. Carrier,* 477 U.S. 478, 488, (1986); *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To

show prejudice, a petitioner must demonstrate that the "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *See McCoy v. Newsome,* 953 F.2d 1252, 1261 (11th Cir. 1992) (*quoting Murray,* 477 U.S. at 494). The allegations of cause and prejudice must be factually specific, not conclusory. *Harris v. Comm'r, Ala. Dep't of Corr.,* 874 F.3d 682, 691 (11th Cir. 2017).

Here, Petitioner fails to make any showing of cause and prejudice to excuse the procedural default of claims 1a, 1b and 2a in this habeas petition, nor does he make any showing of actual innocence. To the extent that Petitioner suggests that he is entitled to excuse the procedural default of his claims on the basis of the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1 (2012), such a claim is without merit because *Martinez* applies to the failure to raise ineffective assistance of trial counsel claims during collateral review proceedings, and not to direct appeal claims. *See Lambrix v. Sec'y, Fla. Dep't of Corr.,* 756 F.3d 1246, 1261, n.31 (11th Cir. 2014).

Likewise, if Petitioner means to excuse the procedural default of these claims by asserting that appellate counsel was ineffective because they failed to raise the issues or the federal constitutional issue associated with the issues on direct appeal, he fails to make any such showing. Claims of ineffective assistance of appellate counsel must be raised by petition for writ of habeas corpus in the appropriate district

court of appeal. *See State v. Dist. Ct. of Appeal, First Dist.,* 569 So. 2d. 439, 442 n.1 (Fla. 1990) (superseded on other grounds by *Baker v. State*, 878 So.2d 1236 (Fla. 2004). There is no record of Petitioner raising such a claim of ineffective assistance of appellate counsel in the Third DCA, and he has not alleged this as a basis to excuse his failure to exhaust his claims here.

Accordingly, Petitioner's claims 1a, 1b, and 2a are procedurally defaulted from federal habeas review and should not be considered on the merits. However, as discussed above, the Respondent concedes that claim 2b is exhausted and ripe for habeas review. [ECF 13, p. 9].

## V. Applicable Law

A. Standard of Review

AEDPA ensures that federal habeas corpus relief works to "guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *See Greene v. Fisher,* 565 U.S. 34, 38 (2011). This standard is both mandatory and difficult to meet. *White v. Woodall,* 572 U.S. 415, 420 (2014).

Deferential review under 28 U.S.C. § 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster,* 563 U.S. 170, 182 (2011); *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011). To review a federal habeas corpus claim, the district court must first identify the last state court decision, if any, that adjudicated the merits

9

of the claim. *See Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016).

Where the claim was "adjudicated on the merits," in the state forum, § 2254(d) prohibits re-litigation of the claim unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States": or, (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Harrington v. Richter,* 562 U.S. 86, 97-98 (2011).

A state court decision is "contrary to" established Supreme Court precedent when it (1) applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established federal law is different from an incorrect application of federal law. *Williams v. Taylor*, 529 U.S. at 410. Consequently, "[a] state court's determination that a claim lacks merit precludes federal habeas corpus relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Mitchell v. Esparza,* 540 U.S. 12, 16 (2003); *Tharpe v. Warden,* 834 F.3d 1323, 1337 (11th Cir. 2016), *cert. den'd,* 137

S. Ct. 2298 (2017) (accord). As applied here, to the extent Petitioner's claim 2b was adjudicated on the merits in the state courts, it must be evaluated under § 2254(d).

B. Ineffective Assistance of Counsel Standard

Here, Petitioner's remaining claim involves an allegation of ineffective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. *Strickland v. Washington,* 466 U.S. 668, 684–85 (1984). When assessing counsel's performance under *Strickland,* the court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. A § 2254 Petitioner must provide factual support for his contentions regarding counsel's performance. *Smith v. White,* 815 F.2d 1401, 1406–7 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.,* 697 F.3d 1320, 1333–34 (11th Cir. 2012).

"[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Burt v. Titlow,* 571 U.S. 12, 20 (2013). "Where the highly deferential standards mandated by *Strickland* and the AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied

11

*Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt,* 735 F.3d 1311, 1323 (11th Cir. 2013).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that: (1) his counsel's performance was deficient, falling below an objective standard of reasonableness; and, (2) he suffered prejudice resulting from that deficiency. *Strickland,* 466 U.S. at 687-88. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Strickland* at 690-91. To uphold a lawyer's strategy, a court need not attempt to divine the lawyer's mental processes underlying the strategy, because there are "countless ways to provide effective assistance in any given case." *Strickland,* 466 U.S. at 689.

To establish deficient performance, the movant must show that, in light of all circumstances, counsel's performance was outside the wide range of professional competence. *Strickland, supra. See also Cummings v. Sec'y for Dep't of Corr.,* 588 F.3d 1331, 1356 (11th Cir. 2009). The Court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." *Chandler v. United States,* 218 F.3d at 1313; *Burger v. Kemp,* 483 U.S. 776 (1987). Counsel is not ineffective for failing to raise non-meritorious issues. *Chandler v. Moore,* 240 F.3d 907, 917 (11th Cir. 2001).

Counsel is also not required to present every non-frivolous argument. *Dell v. United States,* 710 F.3d 1267, 1282 (11th Cir. 2013).

Regarding the prejudice component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *Strickland,* 466 U.S. at 697. *See also Brown v. United States,* 720 F.3d 1316, 1326 (11th Cir. 2013).

## VI. Statement of Facts

On November 28, 2009, Petitioner, who was driving a Ford F-150 pickup truck, drove into the opposite lane of U.S. 1 at 23rd Street in Marathon, Florida. [T. 222, 373, 377, 499].[4] Petitioner smashed into a Chevrolet Monte Carlo head-on. [T. 374, 507, 512, 517-20, 544]. Both Debra Mangrum and Christopher Jennings, the driver and passenger of the Monte Carlo, died as a result of their injuries sustained in the accident. [T. 423, 438].

---

[4] The trial transcripts are docketed in CM/ECF as ECF No. 15-1, 15-2, 15-3, 15-4, 15-5, 15-6, and 15-7. For purposes of this Report, the Court uses the trial transcript page numbers, rather than the CM/ECF citations.

Shortly before the accident, Petitioner almost hit a vehicle driven by Jose Ornelas, who had to pull off to the side of the road. [T. 311]. Petitioner also almost hit a bystander, Efrain Marquez, with his truck. [T. 261].

After the collision, Officer Jacek Szymanski saw Petitioner behind the steering wheel of the truck. [T. 243, 248, 254]. Alvaro Fregoso, Petitioner's acquaintance, saw him seated in the driver's seat shortly after the crash. [T. 299]. Fregoso had also seen Petitioner drunk earlier that evening. [T. 294]. Jose Ornelas also saw Petitioner in the driver's seat shortly after the crash. [T. 315].

Petitioner's passenger, Yendel Garcia, testified that Petitioner was driving. [T. 339]. Genine Hernandez, a first responder, also saw Petitioner in the driver's seat. [T. 380, 386]. Witness George Hernandez saw Petitioner in the driver's seat, and both Petitioner and his passenger were in seatbelts. [T. 465-66, 474]. Petitioner told a paramedic that he had been driving. [T. 608].

Petitioner's blood alcohol content was discovered to be between 0.341 and 0.346 percent, about four times over the legal limit. [T. 766]. Petitioner's defense at trial was that he was not the driver of the vehicle, and that the force of the collision caused Petitioner and Garcia to flip positions inside the truck. [T. 216-17, 891, 903].

## VII. Discussion

In **claim 2b**, Petitioner alleges that trial counsel was ineffective when he failed to obtain a DNA swab from the driver's side airbags. [ECF 1, p. 6]. He claims that

14

a DNA swab from the airbags would have confirmed that Petitioner was not the driver at the time of the car crash, and likely would have resulted in his acquittal at trial. [*Id.* p. 7]. Petitioner raised this claim in his Rule 3.850 Motion [ECF No. 14-1, App. K, p. 77], the denial of which was affirmed by the Third DCA in *Villalobos v. State*, 227 So.3d 588 (Fla. 3rd DCA 2017) (table). When the trial court denied Petitioner's motion, it did so for the reasons set forth in the State's response [ECF No. 14-1, App. N], where the State argued:

> The defendant claims in ground A that his attorney "rendered ineffective assistance of counsel for failing to obtain a DNA swab from the driver's side airbags in the Ford F-150". The defendant fails to specifically state any reason why a DNA swab of the driver's side airbag located in a vehicle where he admitted to two individuals that he was the driver; where he was identified by no fewer than 6 witnesses as being the person in the driver's seat immediately after the accident; where he had to be extracated [sic] from the driver's seat by rescue personnel; where he was seen by one witness to be seatbelted into the driver's seat under a minute after the accident occurred; where he suffered injuries consistent with being the driver; where the passenger, who the defendant claims was driving, suffered injuries consistent with being seatbelted in the passenger seat; would cause the verdict in his trial to be any different. However, the undersigned does not need to argue this point as the record is clear that the airbags were not collected and not tested for DNA by the Florida Highway Patrol. (See testimony of Joseph Mosca, Traffic Homicide Supervisor, February 16, 2016 transcript, p.582, line 21 to p.583 line 4). Furthermore, defense counsel in closing argument stated that the airbags were not collected and therefore no DNA tests could be conducted. (February 11, 2016 transcript, p. 902 lines 14-19). In no way can trial counsel be deficient for failing to have DNA tests conducted on an item that was not collected. Trial counsel was a zealous advocate for the defendant as they repeatedly brought the failure to collect the airbags, and the significance of this failure, to the attention of the jury. As the defendant

> clearly cannot demonstrate a deficiency on the part of his trial counsel no relief is warranted as to ground A.

[ECF No. 14-1, App. M, pp. 111-112].

Here, as an initial matter, Petitioner fails to provide any facts to suggest that the deployed airbags were even available to be investigated and/or preserved at the time that counsel was appointed to represent Petitioner in his second trial. The crash happened in 2009, and Petitioner re-trial took place in 2016, nearly seven years later. [ECF No. 14-1, Apps. B, E]. Further, on cross-examination, counsel established that the airbags were not collected or tested for any DNA residue. [T. 582-83]. Petitioner, therefore, fails to demonstrate that counsel even had the opportunity to investigate and/or preserve DNA evidence at the scene of the crash. *See Edwards v. Sec'y Dept. of Corr.*, 8:06-CV-1145-T-24MAP, 2008 WL 786331, *11-12 (M.D. Fla. Mar. 21, 2008) (finding state's court's rejection of petitioner's ineffective assistance of counsel's claim for failure to file a motion to preserve evidence was a reasonable application of *Strickland* since Petitioner failed to prove that the evidence was in existence at the time counsel was appointed).

Moreover, review of the record reveals that it was clearly part of counsel's strategy at trial to argue that the State failed to present sufficient evidence for the jury to convict Petitioner. On cross-examination, counsel establish that forensic evidence from the vehicle could have been used to determine who was sitting where at the point of the initial collision. [T. 583]. Counsel capitalized on the state's lack

16

of evidence in closing, when he argued that the State failed to present forensic evidence to show who was driving at the time of the crash. [T. 902]. Because it failed to do so, counsel asserted that the State failed to meet its burden of proving Petitioner's guilt.  Counsel's "lack of evidence" strategy was reasonable, and should not be second-guessed here. *See Chandler*, 218 F.3d at 1314; *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983).

However, even when assuming that counsel could have or should have submitted the airbags or vehicle for DNA testing, Movant fails to demonstrate any prejudice. First, there is nothing, other than Movant's conclusory allegation here, that his DNA would have been found on the passenger side panel, and not on the driver's side airbags. Nevertheless, the presence of Petitioner's DNA on the passenger's side panel would not have conclusively established that he was not driving at the time of the crash. This is particularly true where (1) multiple witnesses testified that they saw Petitioner in the driver's seat at the time of the accident, and (2) Petitioner admitted to the police that he was driving.[5] There is, therefore, no reasonable probability that the outcome at trial would have been different had counsel investigated and/or preserved the vehicle for forensic purposes.

---

[5] Although defense witnesses Jose Avena and Francisco Valdovinos testified that Petitioner was in the passenger seat prior to the accident, neither witness came forward until well after the crash. [T. 794, 829]. Moreover, Avena admitted on cross-examination that he had fifteen beers on the night of the incident. [T. 798]. The jury, who also heard that Avena had previously been convicted of a felony [T. 814], found this testimony not credible when it found Petitioner guilty.

Given the foregoing, Petitioner fails to demonstrate either prong of *Strickland* and the state court's resolution of this ineffective assistance of counsel claim is entitled to deference under § 2254(d). *Williams v. Taylor, supra*. Claim 2b should, therefore, be denied.

## VIII.  Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the Petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.,* 647 F.3d 1057, 1060 (11th Cir. 2011). To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, are not refuted by the record and may entitle a petitioner to relief. *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007); *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016), *cert. den'd*, 137 S. Ct. 2245 (2017). The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [petitioner's] claim[s] without further factual development," *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing is not warranted here.

## IX.    Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1);

*Harbison v. Bell,* 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the Petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Upon consideration of the record, this court should deny a certificate of appealability. Notwithstanding, if Petitioner does not agree, he may bring this argument to the attention of the District Judge in objections.

## X.    Conclusion

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied, that no Certificate of Appealability issue and the case be closed.

Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the court. Failure to do so will bar a *de novo* determination by the District Judge

of anything in the recommendation and will bar an attack, on appeal, of the factual

findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474

U.S. 140, 149 (1985).

     SIGNED this 28th day of May, 2020.


_____
UNITED STATES MAGISTRATE JUDGE


cc:   Pierson Villalobos
      K09100
      Jackson Correctional Institution
      Inmate Mail/Parcels
      5563 10th Street
      Malone, FL 32445
      PRO SE

      Magaly Rodriguez
      Office of the Attorney General
      Rivergate Plaza
      444 Brickell Avenue
      Suite 650
      Miami, FL 33131
      305-377-5441
      Fax: 377-5655
      Email: Magaly.Rodriguez@myfloridalegal.com